JOHN P. STOCKTON, attorney-general, informant,

*v.*

THE NORTH JERSEY STREET RAILWAY COMPANY.

1. In proceedings by the attorney-general to restrain the construction of an electric street railway, on the basis that the consent of the municipal authorities, which has been in fact or form given, is illegal, in that the ordinance does not comply with the traction laws of 1893 and 1894, and the act of March 11th, 1893, governing the use and location of poles in public streets, a preliminary injunction will not be allowed when the questions raised are purely legal, and are pending before a court of law for decision in a proceeding upon which the ordinance, if invalid, may be set aside altogether.

2. Where the validity of the objections to an ordinance is not clear, and involves a disputed question of fact, the validity of the ordinance will not be considered on *ex parte* affidavits for a preliminary injunction.

On information &c.

On application for preliminary injunction, heard on information and affidavits and affidavits in reply.

*Mr. Robert H. McCarter*, for the motion.

*Mr. Halsey M. Barrett* and *Mr. Joseph Coult, contra.*

EMERY, V. C.

This information is filed by the attorney-general in his official capacity, and as representing the public rights in highways. Its object is to restrain the defendant, a corporation formed under the laws relating to traction companies, from the further construction of its street railway upon that portion of Bloomfield avenue, in the county of Essex, running from its present terminus at Liberty street, Bloomfield, through the municipalities of Bloomfield township, Glen Ridge, Montclair, Verona, Caldwell township and the borough of Caldwell, until it has obtained the legal consent of all of those municipalities and also of the road committee of the board of chosen freeholders of Essex county, and also to compel the removal from the avenue of the road already constructed. The road, as appears by the affidavits, has already been constructed through Glen Ridge and the townships of Verona and Caldwell. The laws requiring the consents of local authorities to the construction of street railways by traction companies and their operation by electricity, are the acts of 1893 (*P. L. of 1893 p. 302* §§ *6, 7*), the act of 1894 (*P. L. of 1894 p. 374*), which relate to the construction of the street railway, and the act of March 11th, 1893 (*P. L. of 1893 p. 241*), providing for the use of electricity in their operation. This latter act provides (section 2)

"that the municipal board, or any county public road board, or other authorities having the charge or control of any streets, highways or avenues in any city, county, town or township of this state, may, when they deem it proper, authorize the use of poles located or to be located in the public streets or highways with wires strung thereon for the purpose of supplying the motors with electricity, and when a board grants such authority, it may in such case prescribe the manner in which, and the places where such poles shall be located, and the manner in which the wires shall be strung thereon,·and the same may be authorized and prescribed by ordinance."

On February 14th, 1895, the road ·committee of the board of freeholders of Essex county, which is the proper county authority to give consent, passed a resolution giving their consent to the use of electricity, and among other conditions adopted the following relating to the erection of poles:

"For so long as the overhead system is employed, the poles shall be of iron or steel similar to those now in use in the city of Newark for such purpose, and shall be placed along the sides of said avenue, adjoining the curb line."

This consent operated, if at all, along the whole line of the avenue through all the local municipalities, and is the only consent which appears to have been obtained by the defendants from the county authorities for any part of their line upon any part of Bloomfield avenue.

On November 11th, 1895, the borough of Caldwell, acting under the authority of the traction laws of 1893 and 1894, and also the other act of March 11th, 1893, passed an ordinance giving or purporting to give the consent of the borough authorities required by those laws. This ordinance has been removed to the supreme court for review by a *certiorari*, in which the present relators, or some of them, are prosecutors, and this case has been submitted and is now waiting decision. After the hearing, an order was made by the supreme court modifying the restraining power of the writ of *certiorari*, so as to permit the defendants to construct their road through the whole borough and to construct the overhead system of operation by electricity through the borough up to the lands of the prosecutors. This information was then filed with the objects above stated, and the application is now made for a preliminary injunction to restrain the further construction of the road on any part of the avenue, including its construction through the whole of the borough, under its consent, upon the ground that it is illegal. The legality of the Caldwell ordinance is attacked upon four of the grounds or reasons relied on in the *certiorari*, viz., *first*, that it fails to prescribe the manner in which the poles are to be placed, as required by the act of March 11th, 1893; *second*, that it fails to describe properly the places where the poles are to be located,

as required by the act; *third,* that it was passed without the hearing required by the traction acts; and *fourth,* that the above acts are unconstitutional and void. The latter ground was not relied on at this argument.

No *certiorari* has been taken to remove the resolution of the board of freeholders, nor is there any charge of its illegality made in the information, but it is alleged that the poles, if located in Caldwell according to the borough ordinance, cannot be located along the sides of the avenue adjoining the curb line, as required by the county authorities. This involves, as is disclosed by the affidavits, a dispute of fact, on the question both of the existence of any curb line and its location.

This information, being signed by the attorney-general in his official capacity and presented to the court, must be considered as filed by him in the exercise of his rights, as representing the general interest of the public in the highways of the state, and, for the purposes of the decision on this motion, will be treated as not directly affected or involved in the proceeding by *certiorari.*

It must be borne in mind, however, that in the review on *certiorari* of proceedings of local bodies relating to highways, the writ was treated as being brought by the prosecutors in the name and on behalf of the state (*Morris Canal and Banking Co.* v. *State, 2 Gr. 411, 424*), and also that the supreme court, on the review of the proceedings, has power to set them aside absolutely, and such general reversal operates in favor of all persons, although not parties, as prosecutors to the *certiorari* proceedings. *Town of Bergen* v. *State, Van Horn, pros., 3 Vr. 490, 493.* As I read this decision, the court of errors and appeals, on this point, overruled the decision of the supreme court in *1 Vr. 307, 309,* which held that the reversal on *certiorari,* although general in form, was not conclusive in favor of persons not parties.

The courts of this state have defined the nature of the jurisdiction of courts of equity, on an application of the attorney-general, to restrain public nuisances in the highways, and have, in numerous decisions, established the general rule upon which the right to a preliminary injunction must depend. The leading cases are cited in *Raritan Township* v. *Port Reading Railroad*

.Co., 4 Dick. Ch. Rep. 11, 16, and hold that, on the application of the attorney-general or of the local authorities, who have the same right in equity, the injunction can issue only in cases of serious public injury and inconvenience, in fact. The case, as presented by the affidavits attached to the information, does not show any such case of serious public inconvenience or injury, and, on the basis of the proposed road and its operation being, in fact, such a nuisance, the preliminary injunction could not be granted.

The above rule as to the serious nuisance in fact, does not apply to those cases where the local authorities are invested by statute with the right to require their previous consent to the construction of the road on the highways, and in those cases where no such consent has been given, or attempted to be given, the local authorities, by bill, or the attorney-general, by information, may restrain the operation until such consent be given. *Attorney-General* v. *Atlantic Highlands &c. Co.*, 8 Dick. Ch. Rep. 418.

The form of preliminary injunction in such cases is that an injunction issue against the proposed construction *without the consent of the local authority*. *Franklin Township* v. *Nutley Water Co.*, 32 Atl. Rep. 381, 384.

In the present case, both the board of freeholders and the borough of Caldwell have, in form, given their consents under the act, and the basis of the information of the attorney-general is that the consent of the borough is illegal; that, therefore, the whole structure is without legal authority, and a decree is prayed restraining the construction until legal consents have been obtained. If this consent is legal, the attorney-general, as well as the whole public, is bound by the consent.

The case, therefore, differs from the *Atlantic Highlands* and *Nutley Cases* in this vital point. Those were cases where the local authorities had neither given, nor attempted to give, the required consents, and the suits, therefore, were applications by the local authorities or the attorney-general to enforce the statutory right of previous consent, and involved only the question of enforcing that right, and a preliminary injunction was held to be necessary to enforce this statutory right.

In the present case, the consents having been in form given, the question of the validity of these consents is the vital question in this case, upon which the whole right to relief depends, and this question must, at the outset, be determined adversely to the legality before a preliminary injunction can go.

This application must be treated, therefore, not as if the attorney-general or the local authorities were here as guardians of the highway asking simply to enforce their statutory right to local consent, but upon the basis that they are asking to declare invalid a consent which has been in fact or form given.

An analogous case would be where a landowner who had in fact given a paper which was, or might fairly be claimed to be, a consent to the occupation of his land by a railroad company, without previous compensation, should file a bill to restrain their entrance without compensation, on the ground that the consent actually given was not the legal consent required by law. :

In such cases as in the present the right to a preliminary injunction would manifestly depend upon the nature of the questions raised by the consent actually given and the principles applicable to those questions in view of the circumstances of the case. Viewing the application from this standpoint, and assuming the power of this court to pass upon the legality of this ordinance by final decree, I think it clear that the present application for preliminary injunction must be denied for the following reasons :

*First.* The questions here raised in reference to the ordinance and the rights of the defendant under it are purely legal questions, which are now pending before a court of law for decision, in a proceeding upon which the ordinance, if invalid, may be set aside altogether. The application for injunction, therefore, should not be allowed pending that decision. *Attorney-General* v. *Paterson, 1 Stock. 624, 633.*

*Second.* The validity of the objections now raised to the ordinance is not clear. Mr. Justice Depue, in an opinion refusing the *certiorari* to the relators, declared the objections not well founded, and the subsequent allowance of a *certiorari* by the supreme court, even if allowed only on the same objections,

Stockton *v.* North Jersey Street Ry. Co.

is, as I understand the effect of it, only an adjudication that the questions raised are such as should be reargued before the court on *certiorari*. If the question of doubt is to be disposed of upon the case as now presented here, the illegality of the ordinance cannot be considered as clearly made out. Upon the point whether there was a hearing there is a disputed question of fact which should not be settled on *ex parte* affidavits, and the legal questions involved arising from the construction of the statutes are such as should not be decided on preliminary injunction in this case.

The preliminary injunction now applied for must therefore be denied. I do not at this time at all consider the question of the nature and extent of the jurisdiction of this court in this cause on final decree and after the right at law has been determined. The court of errors and appeals, in *West Jersey Traction Co. v. Camden Horse Railroad Co., 8 Dick. Ch. Rep. 163,* have held that on bills filed by street railway companies, claiming rights under ordinances and consents of municipal authorities, the court of equity would, for the purposes of the case, decide upon the validity of the consent and ordinance and decide whether they gave the rights claimed, and although the present application by the attorney-general to enforce legal local consents is novel, yet this novelty may perhaps be considered to be a result of the recent statutes authorizing such consents and of the doubt which has arisen whether the rights of the public in highways, as represented by the attorney-general, can be sufficiently protected on *certiorari* proceedings either by the attorney-general or prosecutors having only a private interest. Important questions arose and were argued which involve the whole question as to the rights, remedies and form of procedure on the part of the public, where the consents are alleged to be illegal, and I am not willing, on this application, to consider or decide these questions. The attorney-general is entitled to an adjudication upon these questions on final hearing.

The application to amend the information by adding prayer for process should be made by the attorney-general or over his signature.

Costs on this application will be costs in the cause.